# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THI MEDICAL, S.A.C., )<br><br>Plaintiff, )<br><br>v. )<br><br>PPE SOLUTIONS GROUP, LLC, )<br>et. al. )<br><br>Defendants. ) | Case No. 1:21-cv-03979 |

**DEFENDANTS PPE SOLUTIONS GROUP, LLC'S, KYLE BARNETTE'S, YOHAN PARK'S AND JPJD2020 LLC'S JOINT MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, <u>STAY PROCEEDINGS</u>**

Kerry Brainard Verdi, Esq.
VERDI & OGLETREE PLLC
1325 G Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 449-7703
Facsimile: (202) 449-7701
kverdi@verdiogletree.com

*Counsel to Defendants PPE Solutions, Kyle Barnette, JPJD2020, and Yohan Park*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND.......................................................................................... 2

   A.   The Arbitration Clause.......................................................................................... 2

   B.   THI's Claims Are within the Scope of the Arbitration Clause............................. 2

   C.   Barnette, JPJD2020 and Park are Alleged Agents of PPE Solutions ................. 4

GOVERNING LAW........................................................................................................ 5

ARGUMENT .................................................................................................................. 6

   A.   The FAA Applies to this Case ............................................................................. 6

   B.   The Court Should Compel Arbitration ................................................................ 7

      1.   The Arbitration Clause Is Valid and Enforceable ......................................... 7

         a.   THI Agreed to Arbitrate with PPE Solutions........................................... 7

         b.   The Arbitration Clause Applies to PPE Solution's Alleged Agents ........... 8

      2.   Plaintiff's Claims Are within the Scope of the Arbitration Clause................. 9

   C.   Alternatively, this Case Should be Stayed ....................................................... 10

CONCLUSION.............................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aekyung Co., Ltd., v. Intra & Co., Inc.,*
  2000 WL 1521202 (S.D.N.Y. October 13, 2000) .................................................. 10
*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995) .................................................................................................. 6, 7
*AT&T Technologies, Inc. v. Commc'nc Workers of Am.,*
  475 U.S. 643 (1986) ..................................................................................................... 9
*Avila Group, Inc. v. Norma J. of Ca.*,
  426 F. Supp. 537 (S.D.N.Y. 1977) ............................................................................. 7
*Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.,*
  189 F.3d 289 (2d Cir.1999) ..................................................................................... 5, 6
*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003) ....................................................................................................... 7
*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
  815 F.2d 840 (2d Cir.1987) ........................................................................................ 6
*Hoffman v. Aaron Kamhi, Inc.,*
  927 F. Supp. 640 (S.D.N.Y. 1996) ............................................................................. 8
*IDS Life Ins. Co. v. SunAmerica, Inc.,*
  103 F.3d 524 (7th Cir.1996) ..................................................................................... 10
*Landis v. FINOVA Capital Corp.,*
  2000 WL 546985 (S.D.N.Y. May 3, 2000) ............................................................... 6
*McAllister Bros., Inc. v. A & S Transp. Co.,*
  621 F.2d 519 (2d Cir. 1980) ....................................................................................... 8
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ..................................................................................................... 6, 9
*Oldroyd v. Elmira Savings Bank, FSB,*
  134 F.3d 72 (2d Cir.1998) .......................................................................................... 6
*Perry v. Thomas*,
  482 U.S. 483 (1987) ..................................................................................................... 7
*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ..................................................................................................... 6
*Provident Bank v. Kabas*,
  141 Supp. 2d 310 (E.D.N.Y. 2001) ...................................................................... 6, 10
*Specht v. Netscape Communications Corp.*,
  306 F.3d 17 (2d Cir.2002) .......................................................................................... 6
*WorldCrisa Corp. v. Armstrong*,
  129 F.3d 71 (2d Cir.1997) .................................................................................... 6, 10

**Statutes**

9 U.S.C. § 2 .................................................................................................................. 5, 6
9 U.S.C. § 3 ..................................................................................................................... 5
9 U.S.C. § 4 ..................................................................................................................... 5

Defendants PPE Solutions Group, LLC ("PPE Solutions"), Kyle Barnette, Yohan Park and JPJD2020 LLC ("JPJD2020") (collectively "Defendants")[1], by and through their undersigned counsel, respectfully submit this Joint Memorandum in Support of Motion to Compel Arbitration or, in the Alternative, Stay Proceedings.[2]

## INTRODUCTION

In its Complaint, Plaintiff THI Medical, S.A.C. ("THI" or "Plaintiff") alleges 14 causes of action against PPE Solutions; PPE Solution's Chief Executive Office, Mr. Barnette; PPE Solution's alleged agent JPJD2020; and, JPJD2020's member, Mr. Park. (Dkt. #1 at 3-4, ¶¶ 7-10.) All of THI's claims arise from either one of two contracts between THI and PPE Solutions, both of which contain an identical arbitration clause ("Arbitration Clause") that mandates arbitration of "any disputes under this Contract." (Dkt. #1-3 at 4; Dkt. #1-7 at 4.)

As explained below, Defendants' Motion should be granted under the Federal Arbitration Act ("FAA") because the Arbitration Clause is valid and enforceable, and THI's claims against Defendants are within its scope. Accordingly, the Court should dismiss the Complaint and compel arbitration or, in the alternative, stay the proceedings as requested herein.

---

[1] This Motion is not brought on behalf of Defendants Claudio Torres or TUV Rheinland, and they are specifically excluded from the defined term "Defendants" for purposes of compelling arbitration.

[2] Pursuant to the Court's Individual Rules and Procedures for Civil Cases, while a pre-motion conference was not required for this Motion, undersigned counsel spoke with and sent a letter to opposing counsel citing the controlling authorities. In the unlikely event that the Court does not compel arbitration, Plaintiff's counsel does not oppose providing undersigned counsel 20 days to file a responsive pleading.

## FACTUAL BACKGROUND

### A.      The Arbitration Clause

On December 1, 2020, THI entered into a contract with PPE Solutions for the purchase of 229,440 N95 masks ("First Contract").  (Compl. ¶ 30 & Ex. C; Dkt. #1-3.)  The First Contract contains the Arbitration Clause, which governs "any dispute under this Contract."  (Dkt. #1-3 at 4.)  Mr. Barnette signed the First Contract on behalf of PPE Solutions.  (Compl. ¶ 34 & Ex. C, Dkt. #1-3 at 7.)  Subsequently, on December 18, 2020, THI executed a second contract with PPE Solutions for the purchase of an additional 500,000 N95 masks ("Second Contract").[3]  (Id. ¶ 47 & Ex. G; Dkt. #1-7.)  The Second Contract contains the same Arbitration Clause as the First Contract. (Compl. Ex. G; Dkt. #1-7 at 4.)  As he did with the First Contract, Mr. Barnette signed the Second Contract on behalf of PPE Solutions.  (Id. ¶ 49; Dkt. #1-7 at 7.)

### B.      THI's Claims Are within the Scope of the Arbitration Clause

The Complaint alleges five counts solely against PPE Solutions: Breach of Contract (Counts I & II); Breach of Implied Covenant of Good Faith and Fair Dealing (Counts III & IV); and Breach of New York's General Business Law (Count XVIII) (collectively, the "PPE Counts").

The Complaint alleges four counts against both PPE Solutions and its CEO Mr. Barnette: Fraudulent Inducement (Counts VI & VII); Fraud (Count XI); and Negligent Misrepresentation (Count XV) (collectively, the "PPE/Barnette Counts").

The Complaint alleges a sole count for Breach of New York's General Business Law against JPJD2020 ("JPJD Count") (Count IXX), but also alleges the following three counts against both JPJD2020 and its member Mr. Park:  Fraudulent Inducement (Count VIII); Fraud (Count

---

[3] Prior to executing the Second Contract, THI received three invoices from JPJD2020 for the second order of N95 masks.  (Compl. ¶ 45 & Ex. F.)  THI alleges that it expressly relied on representations made by JPJD2020 when executing the Second Contract.  (Id. ¶ 54.)

XIII); and Negligent Misrepresentation (Count XVII) (collectively, the "JPJD/Park Counts"). Finally, Count XXI alleges conspiracy against all Defendants.

The Complaint alleges that all of the PPE Counts arise under either the First or Second Contract. *See* Compl. ¶ 79 (Count I:  PPE Solutions "fundamentally breached the First Contract"); ¶ 88 (Count II:  PPE Solutions "fundamentally breached the Second Contract"); ¶ 94 (Count III: "THI and PPE Solutions are parties to the First Contract.  Under the First Contract, THI had a reasonable commercial expectation of receiving authentic 3M respirators, the express delivery of which was required under the First Contract"); ¶ 100 (Count IV: "THI and PPE Solutions are parties to the Second Contract.  Under the Second Contract, THI had a reasonable commercial expectation of receiving authentic 3M respirators, the express delivery of which was required under the Second Contract"); ¶ 209 (Count XVIII: "PPE Solutions contracted with THI on two separate occasions for the sale and delivery of 3M respirators to Peru, thereby engaging in "business, trade or commerce" as defined in Section 349(a), New York General Business Law.").

Similarly, the Complaint alleges the PPE/Barnette Counts arise under either the First or Second Contract. *See* Compl. ¶ 116 (Count VI: "Barnette and PPE Solutions also made numerous false representations of material fact in the First Contract with THI regarding the authenticity of the First Order"); ¶ 124 (Count VII: "Barnette and PPE Solutions also made numerous false representations of material fact in the Second Contract with THI regarding the authenticity of the Second Order"); ¶¶ 155-56 (Count XI: "Barnette, through and with the assistance of PPE Solutions, made various misrepresentations of material fact to THI in conjunction with negotiations over the [First Contract/Second Contract]");  ¶ 187 (Count XV: "A special relationship existed between THI and PPE Solutions under the First Contract and Second Contract, imposing a duty on PPE Solutions to impart correct information to THI regarding the Product.").

The Complaint likewise alleges that both the JPJD Count and the JPJD/Park Counts arise under the Second Contract. *See* Compl. ¶¶ 49, 133 (Count VIII: alleging that the Second Order invoices provided by JPJD2020, together with the representations in the Second Contract, induced THI to execute the Second Contract); ¶ 173 (Count XIII: "Park, through and with the assistance of JPJD2020, made various misrepresentations of material fact to THI in conjunction with negotiations over the Second Contract"); ¶ 202 (Count XVII: "Therefore, a special relationship existed between THI on the one hand, and Park and JPJD2020 on the other, under the Second Contract, imposing a duty on Park and JPJD2020 to impart correct information to THI."); ¶ 217 (Count IXX: "JPJD2020 acted as PPE Solutions' agent in the sale and delivery of the Second Order to Peru, thereby engaging in "business, trade or commerce"). Finally, the conspiracy count is premised on both the First and Second Contracts. *See* Compl. ¶ 235 ("The combined actions of Torres, PPE Solutions, Barnette, JPJD2020, Park and TUV were intended to induce THI to rely on the afore-described misrepresentations in executing the First and Second Contract.").

### C.     Barnette, JPJD2020 and Park are Alleged Agents of PPE Solutions

Although Defendants Barnette, JPJD2020 and Park are non-signatories to the First and Second Contracts, they still may enforce the Arbitration Clause because the Complaint alleges that Barnette, JPJD2020 and Park were all acting as alleged agents of PPE Solutions under the Contracts. For example, Mr. Barnette is alleged to be the Chief Executive Officer of PPE (Compl. ¶ 8), and the Complaint is devoid of any allegation that Mr. Barnette ever acted outside the scope of his employment. In fact, the Complaint alleges that Mr. Barnette signed both the First and Second Contracts "on behalf of PPE Solutions." (Compl. ¶¶ 34 & 49.)

With respect to JPJD2020 and Mr. Park, the Complaint alleges that "PPE Solutions had engaged the help of JPJD2020 and its member, Park, to fulfil PPE Solutions' obligations for the

Second Order," (Compl. ¶ 46), and further avers that "JPJD2020 performed and executed on PPE Solutions' obligations under the Second Contract." (Compl. ¶ 57.) THI specifically and repeatedly alleges that JPJD2020 and Park had an agency relationship with PPE Solutions arising under the Second Contract. *See* Compl. ¶ 170 ("At all times relevant to this lawsuit, JPJD2020 and Park were acting as **agents** of PPE Solutions when they performed under the Second Contract." (emphasis added)); ¶ 201 (alleging same); ¶ 217 ("JPJD2020 acted as PPE Solutions' **agent** in the sale and delivery of the Second Order to Peru . . ." (emphasis added)).

## GOVERNING LAW

The FAA was enacted to promote the enforcement of private agreements to arbitrate. *See Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.,* 189 F.3d 289, 294 (2d Cir.1999). The FAA provides that a written agreement to arbitrate contained in a contract evidencing a transaction involving interstate commerce shall be "valid, irrevocable and enforceable." 9 U.S.C. § 2. The FAA further provides a mechanism for district courts to stay judicial proceedings "upon being satisfied that the issue before the court is referable to arbitration." 9 U.S.C. § 3. Finally, the FAA allows a party to petition a court to compel arbitration. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" 9 U.S.C. § 4.

When faced with a request for a stay or to compel arbitration, the court must address two separate questions: (1) whether the parties have agreed to arbitrate; and (2) whether the scope of the arbitration agreement encompasses the claims asserted. *See Chelsea Square Textiles,* 189 F.3d at 294. The strong federal policy in favor of arbitration requires courts to resolve any doubts regarding the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983); *Chelsea Square Textiles,* 189 F.3d at 294; *Landis v. FINOVA Capital Corp.*, 2000 WL 546985, *1 (S.D.N.Y. May 3, 2000).

"Arbitration clauses couched in language encompassing all disputes 'arising under' or 'in connection with' an agreement are referred to as the 'prototypical broad' arbitration provision justifying a presumption in favor of arbitration." *Provident Bank v. Kabas*, 141 Supp. 2d 310, 316 (E.D.N.Y. 2001) (citing *Oldroyd v. Elmira Savings Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998)). Ultimately, "[i]f the plaintiff's allegations 'touch matters covered by the parties' ... agreements then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (citing *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 75 (2d Cir.1997), quoting, *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987)); *see also Specht v. Netscape Communications Corp.,* 306 F.3d 17, 36 (2d Cir.2002) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, this Court focuses on the factual allegations in the complaint rather than the legal causes of action asserted." (internal citation omitted)).

<u>**ARGUMENT**</u>

### A.  The FAA Applies to this Case

The FAA applies to an arbitration agreement that is part of a written contract evidencing a transaction involving interstate commerce.  *See* 9 U.S.C. § 2.  The FAA's "involving commerce" requirement "reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967) (quotation omitted); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995) (holding that "involving commerce" is the functional equivalent of "affecting commerce").  In other words, the term "involving" commerce in the FAA is construed in the

broadest permissible sense under the Commerce Clause.  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (citing *Allied-Bruce*, 513 U.S. at 273-74; *Perry v. Thomas*, 482 U.S. 483, 490 (1987)).

The FAA's interstate commerce requirement is satisfied in this case because the Arbitration Clause that Defendants seek to enforce is contained in both the First and Second Contracts that implicate transactions involving interstate commerce.  To be sure, Plaintiff alleges the First Contract involved the shipment of masks from PPE Solutions' warehouse in New Jersey, through Miami, Florida, to Lima, Peru.  (Dkt. #1 at 9-10, ¶¶ 39-42.)  Likewise, Plaintiff alleges that the Second Contract involved the shipment of masks from Hong Kong to Lima, Peru.  (Dkt #1 at 13, ¶ 57.)  These transactions plainly involved interstate commerce that triggers application of the FAA to this case.

### B.      The Court Should Compel Arbitration

As explained below, the Court should compel arbitration because the Arbitration Clause is valid and enforceable and all of Plaintiff's claims against Defendants are within its scope.

### 1.      The Arbitration Clause Is Valid and Enforceable

### a.      THI Agreed to Arbitrate with PPE Solutions

THI signed the First and Second Contracts with PPE Solutions for the purchase of N95 masks and is now seeking to enforce both contracts against Defendants.  (Compl. ¶¶ 34, 49.)  Thus, THI does not—and cannot—contest the existence of either the First or Second Contracts, both of which contain the Arbitration Clause that covers "any disputes under" the two contracts.  (Dkt #1-3 at 4; Dkt. #1-7 at 4.)   As such, THI is estopped from repudiating the Arbitration Clause in the contracts.  *See Avila Group, Inc. v. Norma J. of Ca.*, 426 F. Supp. 537, 542 (S.D.N.Y. 1977) ("To

allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [FAA].").

**b.      The Arbitration Clause Applies to PPE Solution's Alleged Agents**

THI's claims against non-signatories Mr. Barnette, JPJD2020, and Mr. Park also must be arbitrated because THI alleges that they were agents of PPE Solutions in the performance of the First and Second Contracts.   Traditional principles of agency law may bind a non-signatory to an arbitration agreement.  *See McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980).  "A non-signatory to an arbitration agreement may benefit from that agreement where the legal basis for, and the factual context of, the claims alleged against the non-signatory are the same as the claims alleged against the signatory where the non-signatory is the disclosed agent or principal of the signatory."  *Hoffman v. Aaron Kamhi, Inc.*, 927 F. Supp. 640, 643 (S.D.N.Y. 1996) (internal citation omitted).

With respect to PPE Solution's CEO, Mr. Barnette, Plaintiff specifically alleges that he executed both the First and Second Contract as an agent for PPE Solutions.  (Compl. ¶¶34, 49.) Further, THI asserts the same claims against PPE Solutions that it asserts against Mr. Barnette. *See, supra,* § II.B (outlining PPE/Barnette Counts).  Thus, under agency principles, the Arbitration Agreement extends to claims against Mr. Barnette as well.

The Arbitration Clause likewise applies to THI's claims against JPJD2020 and Mr. Park because THI alleges that they acted as agents of PPE Solutions "when they performed under the Second Contract."  (Compl. ¶¶ 170, 201; *see also id.* ¶ 217 (alleging that "JPJD2020 acted as PPE Solutions' agent in the sale and delivery of the Second Order to Peru").)  Although JPJD2020's name does not appear in the Second Contract (Compl. ¶ 50), JPJD2020 nonetheless was a "disclosed" agent; indeed, prior to signing the Second Contract, THI admits that it received three

8

invoices from JPJD2020 for N95 masks under the Second Contract—which was signed the day after THI received the invoices from JPJD2020. (Compl. ¶¶ 45-47, 49.)  In fact, THI acknowledges that it reviewed the invoices before signing the Second Contract. (Compl. ¶ 49.)  Further, THI's claims against JPJD2020 and Mr. Park are the same as THI's claims against PPE Solutions, except that the claims against JPJD2020 and Mr. Park are limited only to the Second Contract. *See, supra,*, § II.B (outlining the JPJD2020 Count and JPJD2020/Park Counts).  Agency principles, therefore, compel the finding that the Arbitration Agreement extends to PPE Solution's agents JPJD2020 and Mr. Park as well.

### 2.    Plaintiff's Claims Are within the Scope of the Arbitration Clause

All of Plaintiff's claims against Defendants fall squarely within the scope of the Arbitration Clause, which is a "prototypically broad" arbitral agreement that covers "all disputes" arising under the contracts. (Dkt. #1-3 at 4; Dkt. #1-7 at 4.)  Although Plaintiff has asserted a mix of contract and tort claims, it is not the label of the claims that matters, but whether they touch on the Arbitration Clause.  As detailed above, every one of Plaintiff's claims Defendants arises "under" either the First or Second Contract. *See, supra,* § II.b.  Thus, the Arbitration Clause applies to the claims alleged in the Complaint.

Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25.  As a result, arbitration should be denied only when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Commc'nc Workers of Am.,* 475 U.S. 643, 650 (1986).  Thus, any doubts (and there should be none) regarding the Arbitration Clause's scope must be resolved in favor of compelling arbitration.

C.      **Alternatively, this Case Should be Stayed**

Where certain claims or parties are not subject to arbitration, the Court still has the power to stay litigation pending the outcome of an arbitration involving other parties or claims. This power is rooted in the Court's inherent ability to "control the disposition of causes on its docket with economy of time and effort for itself, for counsel and for litigants."  *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 76 (2d Cir.1997) (holding that it would be an abuse of district court's discretion to refuse to stay litigation while arbitration proceeds) (internal citations omitted). "When considering whether to stay a case in favor of arbitration, courts consider the expense and inconvenience of parallel litigation as well as the possibility of inconsistent determinations." *Provident Bank,* 141 F. Supp. 2d at 318-19.  The Second Circuit has found that it is not appropriate to allow a party to avoid arbitration by suing a related party "with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect on the arbitration" *WorldCrisa,* 129 F.3d at 76, quoting, *IDS Life Ins. Co. v. SunAmerica, Inc.,* 103 F.3d 524, 530 (7th Cir.1996).  Further, it is appropriate to stay litigation when arbitration may ultimately decide the same facts at issue in the litigation.  *See e.g., Aekyung Co., Ltd., v. Intra & Co., Inc.,* 2000 WL 1521202 * 2 (S.D.N.Y. October 13, 2000).

In the unlikely event that the Court compels arbitration as to one or more, but not all, of the moving Defendants, the Court should stay this action as to the non-arbitrating Defendants until the arbitration of Plaintiff's claims against the arbitrating Defendants is concluded.  Indeed, in that circumstance, a stay would promote economy and efficiency and avoid the danger of potentially inconsistent rulings by the arbitrator and this Court on common issues of fact and law.  Further, it would be prejudicial to require the Defendants to defend this complaint in two separate fora when they have bargained for the benefit of arbitration specifically to avoid going "through litigation."

(Compl. Exs. C & G.)

## CONCLUSION

For all the foregoing reasons, this Motion should be granted and the Court should enter an order referring Plaintiff's claims against all of the moving Defendants to arbitration, in accordance with the Arbitration Clause.  Alternatively, in the unlikely event that the Court decides that Plaintiff must arbitrate with only some (but not all) of the moving Defendants, the Court should enter a stay of this litigation against the non-arbitrating Defendants until the arbitration of Plaintiff's claims against the arbitrating Defendants is completed.

Dated: June 30, 2021                    Respectfully submitted,


                                        /s/ Kerry Brainard Verdi
                                        Kerry Brainard Verdi, Esq.
                                        VERDI & OGLETREE PLLC
                                        1325 G Street, NW, Suite 500
                                        Washington, DC 20005
                                        Telephone: (202) 449-7703
                                        Facsimile: (202) 449-7701
                                        kverdi@verdiogletree.com

                                        *Counsel to Defendants PPE Solutions, Kyle Barnette, JPJD2020, and Yohan Park*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all parties of record by filing in the Court's electronic filing system this 30th day of June, 2021.


                                        */s/ Kerry Brainard Verdi*
                                        Kerry Brainard Verdi

11